## UNITED STATES v. TEXAS & N. O. R. CO. et al.

### No. 11238.

Circuit Court of Appeals, Fifth Circuit.

May 10, 1945.

Rehearing Denied June 15, 1945.

Brian S. Odem, U. S. Atty., and J. K. Smith, Asst. U. S. Atty., both of Houston, Tex., for appellant.

T. A. Slack and Tom M. Davis, both of Houston, Tex., Allen Charlton, of Dallas, Tex., J. D. Dodson, of San Antonio, Tex., M. E. Clinton, of Dallas, Tex., and Elmore H. Borchers, of Laredo, Tex., for appellees.

Before HOLMES, McCORD, and WALLER, Circuit Judges.

HOLMES, Circuit Judge.

This is an action for a declaratory judgment brought by the United States against several railroad companies to determine prevailing freight rates upon intra-state shipments of sand, gravel, crushed stone, and related articles, to the stations of Flour Bluff and Flour Bluff Junction in Texas.

In 1940 the United States began to build and operate the Corpus Christi Naval Air Base, an enterprise requiring extensive construction and maintenance. To facilitate and expedite the project, the Government determined to construct and maintain a railroad track 19 miles long from Flour Bluff Junction, at which point the line connected with the Texas-Mexican Railroad, to Flour Bluff. Negotiations with carriers operating in the territory were begun in order to reach an agreement with respect to rate advantages to which the Government might be entitled by reason of using its own trackage. In due course, an agreement was reached and the Railroad Commission of Texas, after hearings upon applications presenting said agreement, promulgated Freight Circular No. 13,156. This circular comprised an amendment to Consolidated Tariff No. 1, and contained a provision that on sand, gravel, crushed stone, and related articles, from all points of origin to Flour Bluff, "standard single line scale based on short line distance shall apply." The rate thus prescribed admittedly was applicable to shipments of the described commodities between October 10, 1940, and December 30, 1940.

On December 5, 1940, the Railroad Commission promulgated Circular No. 13,321, effective December 30, 1940, in which the scale of rates theretofore provided for both single line and joint line carriage of said commodities was substantially reduced. Said circular contained this paragraph: "We further find that the evidence does not justify cancellation of any existing special rates, and that the said special rates should be retained, the rates to be prescribed to be applied if lower." Under this circular, the revised tariff on the joint line scale was lower than the pre-existing tariff on the single line scale, whereupon the carriers, taking the view that the single line scale fixed by Circular 13,156 was a special rate within the meaning of Circular 13,321, charged the Government rates based on the revised joint line scale after December 30, 1940. The Government of course contends that, since Circular 13,156 was not abrogated by Circular 13,321, the rates charged it should have been computed on the single line scale as said scale was reduced by Circular 13,321.

It is true that Circular 13,156 gave the Government a special rate in the sense that the cheaper single line rate was charged even though a joint line rate would otherwise apply. However, it was not a special rate in the sense that it fixed a rate of 8¢ per hundred pounds of freight (as was done by Circular 13,280) or some other specific charge. Actually it created no new or special rate at all, but only applied a familiar formula under which charges should be computed under standard tariffs. Therefore, what the Commission meant by the phrase "existing special rates" does not clearly appear from the language of the circular alone, and the surrounding facts and circumstances must be examined for evidence indicating the intent of the Commission.

In these attendant facts, we find several considerations persuasive of the view advanced by appellant. The Government, by virtue of its construction and maintenance of the 19-mile track, was not an average customer. Railroad tariffs are based in part upon the return made necessary by expenditures for acquiring rights of way and constructing and maintaining trackage. The partial elimination of these elements of expense not only entitled the Government to cheaper freight rates, but also deprived the railroads of grounds for charging normal rates. The favorable formula prescribed by Circular 13,156 was but a recognition of this by the railroads

898

and the Commission. When Circular 13,-321 was promulgated, this situation was unchanged, and the Government was as much entitled to preferred rates as before. To take away the benefits conferred, as the railroads contend was the effect of Circular 13,321, would be to deprive the Government of a right to which it was entitled, not of a preference gratuitously bestowed upon it. Such an unreasonable intent may not be ascribed to the Commission in the absence of language plainly requiring it.

We think the means employed by the Commission to favor the Government in Circular 13,156 are highly significant. This circular was promulgated only three months before the tariff reductions contained in Circular 13,321 became effective. It cannot be doubted that the plans for the new tariffs had been worked out long in advance, and that the Commission was well aware, when Circular 13,156 was promulgated, that the new scales soon would become effective. The Government's pending claim to a favorable rate differential was not based upon considerations of a passing, temporal nature, but upon a permanent and unchanging status. It would be unreasonable for the Commission, armed with this information, to attempt to solve the problem by conferring a special rate that would be abrogated, by its own order, within three months. It would be much more sensible for it to prescribe a formula, a static and unchanging differential, that would continue under subsequent tariffs the benefits due. We think that is precisely what was done.

It is noteworthy that Circular 13,156 provided that the "standard single line scale" should apply, not the "standard single line scale *as fixed by present tariffs.*" Only by construing Circular 13,156 as though the italicized words were written therein may the contention of the railroads be sustained. Since such a meaning does not plainly appear from the language employed, and since such an interpretation of the circular is, for reasons assigned, patently unreasonable, we cannot concur in it. We hold that the rates properly chargeable under the circulars after December 30, 1940, were those computed on the standard single line scale as revised downward by Circular 13,321.

The judgment appealed from is reversed, and the cause remanded to the court below for further proceedings not inconsistent with this opinion.